M.G. BURTON, Appellant,

v.

NATIONAL BANK OF COMMERCE OF DALLAS, Appellee.

No. 05–82–01473–CV.

Court of Appeals of Texas, Dallas.

Sept. 11, 1984.

Rehearing Denied Oct. 15, 1984.

Douglas R. Hudman, Fort Worth, for appellant.

Cynthia A. Pyle, John Guittard, Counts, Dodge & Ringer, Dallas, for appellee.

Before STEPHENS, VANCE and ALLEN, JJ.

STEPHENS, Justice.

The National Bank of Commerce of Dallas sued appellant, M.G. Burton, for the deficiency remaining on a promissory note after the bank's sale of the collateral security, a truck. The security was voluntarily delivered to the bank by Burton, at a time when his note was in default, after he was advised by a bank officer that a buyer was available to buy the truck. The parties differ in their interpretation of the meaning to be given their conversation which resulted in the delivery of the truck to the bank. Burton defended the suit by contending that his voluntary delivery of the truck to the bank, in reliance on the bank's offer to extinguish the debt, constituted an accord and satisfaction of the entire indebtedness; alternatively, that the bank's representations to him constituted a waiver of the bank's right to a deficiency; and that the bank should be estopped to assert a deficiency. Although Burton received favorable jury answers on each ground of his defense, on motion of the bank, the trial court rendered Judgment Non Obstante Veredicto. We conclude that the trial court erroneously rendered judgment for the bank, and accordingly, we reverse and render judgment that the bank take nothing by its suit.

The jury, in answer to special issues, found by a preponderance of the evidence: that "there was an 'accord and satisfaction' in the tender by Burton to National Bank of Commerce of Dallas of any monies from the sale of the Dodge tractor in exchange for the complete forgiveness of any deficiency balance on the Note by National Bank of Commerce of Dallas"; that the "National Bank of Commerce is 'estopped' as that term is herein defined by its conduct from asserting a demand for the deficiency balance due on the note"; and that "National Bank of Commerce's representations to Burton concerning delivery of the vehicle in question constituted a waiver by National Bank of Commerce of its right to claim a deficiency."

Burton contends in four points of error that the trial court erred: (1) in disregarding the jury's answers to the special issues and granting judgment notwithstanding the verdict; (2) in disregarding the jury's answer on the issue of waiver; (3) in disregarding the jury's answer on the issue of accord and satisfaction; and (4) in disregarding the jury's answer on the issue of estoppel. The Bank answers Burton's points of error by contending that the trial court's judgment should be affirmed because: (1) an oral waiver or release of a promissory note without consideration is legally ineffective to discharge or cancel a promissory note under Texas law; (2) Burton failed to prove that the bank intended to make any unconditional, unqualified waiver or release of the note; (3) Burton failed to prove legally sufficient consideration for the alleged accord and satisfaction; (4) Burton failed to prove legally sufficient detrimental reliance in support of the defense of estoppel; and (5) that Burton's first point of error is vague and indefinite, is unsupported by briefing, and fails to state specific grounds for relief.

■ Appellee's final counterpoint as to Appellant's first point of error is sustained. Although, we find no necessity to discuss the question of accord and satisfaction, we do find it necessary to discuss the general law of waiver and estoppel, and the perti-nent provisions of the Texas Business and Commerce Code.

## WAIVER

■ The law of waiver is recognized in Texas as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *United States Fidelity and Guaranty Co. v. Bimco Iron and Metal Corp.*, 464 S.W.2d 353 (Tex. 1971). Until *United States Fidelity* was handed down, waiver, to be effective, required consideration. However, *United States Fidelity* expressly overruled prior law requiring consideration, and held that waiver need not be founded on a new agreement, nor be supported by a consideration, nor be based on estoppel. The doctrine of waiver has been held to apply to all rights or privileges to which a person is legally entitled. *Evans v. Whicker*, 59 S.W.2d 420, 423 (Tex.Civ.App.—Amarillo 1933, no writ). Waiver has been held to be a question of fact, dependent upon things done and said. *Lewis v. Smith*, 198 S.W.2d 598, 601 (Tex.Civ.App.—Fort Worth 1946, writ dism'd); *Alford Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

## WAIVER DISTINGUISHED FROM ESTOPPEL

■ Waiver is a unilateral act performed solely by a party in whom a legally enforceable right exists; estoppel arises when his adversary acts in accordance therewith, to his detriment. *See Tex-Craft Builders, Inc. v. Allied Constructors of Houston, Inc.*, 465 S.W.2d 786 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.); *Graham v. San Antonio Mach. & Supply Corp.*, 418 S.W.2d 303 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.). It has been held that the broad concept embodied in the doctrine of estoppel is that a person who by his speech or conduct has induced another to act in a particular manner ought not to be permitted to adopt an inconsistent position, attitude, or course of conduct to the loss or injury of such other. *First State Bank of Riesel v. Dyer*, 248 S.W.2d 785,

*affirmed* 151 Tex. 650, 254 S.W.2d 92 (1953).

## WAIVER AS AN ELECTION OF REMEDIES

■ Waiver has been held to be analogous to the doctrine of election of remedies. *Langley v. Norris*, 167 S.W.2d 603 (Tex.Civ.App.—Eastland), *aff'd* 141 Tex. 405, 173 S.W.2d 454 (1943). Furthermore, once a right is waived, such right is lost forever and cannot be reclaimed without the consent of the other party. *Witt v. Universal Automobile Ins. Co.*, 116 S.W.2d 1095 (Tex.Civ.App.—Waco 1938, writ dism'd).

## TEXAS BUSINESS AND COMMERCE CODE

Finally we must look to TEX.BUS. & COM.CODE ANN. §§ 9.501–9.507 (Tex. UCC) (Vernon Supp.1984) which governs the remedies of a secured party after default. Section 9.501(c) provides that to the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to therein may not be waived or varied except as provided with respect to compulsory disposition and redemption of collateral, but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable.

Section 9.504 grants the secured party, after default, the right to dispose of any or all of the collateral at a private or public sale. The section then governs the disposition of the proceeds of the sale. The section further requires that the debtor be notified of the time and place of the sale, if the debtor has not signed, after default, a statement renouncing his right to notification of sale. Section 9.505(b) gives the secured party, after default, the right to elect to keep the collateral security in full satisfaction of the debt or to dispose of it in accordance with section 9.504.

■ The bank first argues that TEX. BUS. & COM.CODE § 3.605(a) (Tex.UCC) (Vernon 1968) is the exclusive method by which a promissory note can be released, absent new consideration. In support of this argument the Bank relies on the comment to section 3.605. We disagree with appellee's reasoning. First, we note that section 3.605(a) is permissive rather than mandatory, in that it provides that the holder of an instrument may even without consideration discharge any party by following specified procedures. Section 3.605 must be read along with section 3.601, and sections 9.501–9.507.

■ Next, the Bank argues that Burton failed to prove that the bank officer intended to make an unconditional waiver. The bank's reliance for this proposition is on the testimony of the bank officer that he did not make an unconditional waiver. Suffice it to say that the bank's intention was in dispute, and the jury chose to find against the bank on this issue.

■ Finally, the bank argues that Burton failed to prove legally sufficient detrimental reliance on the bank's representations. In essence they argue that because Burton was under a legal obligation to pay the note, the return of the collateral and its subsequent sale could not be a detriment to Burton. We disagree.

This case is governed by the rules laid down in *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769 (Tex.1982). In *Tanenbaum* a creditor sued for a deficiency judgment following default on a secured note and repossession. The debtor had asked the creditor to take possession of the collateral in full satisfaction of his debt. The creditor took possession of the collateral, with no indication as to its willingness to extinguish the debt, and later determined that it was not economically feasible to repair the equipment for sale, scrapped it, and then sued the debtor for a deficiency. The court discussed at length the options available to a creditor under sections 9.504 and 9.505, and found that the intent of the legislature in enacting those provisions of the Texas Business and Commerce Code,

was to put a creditor to an election to either sell the repossessed collateral pursuant to section 9.504 or to retain the collateral in complete satisfaction of the debt pursuant to section 9.505. No notice was given the debtor in this case of the disposition to be made of the collateral by the creditor, and the court held that the creditor, by retaining the collateral, had elected to extinguish the entire debt, and was not entitled to sue for a deficiency judgment.

■ We conclude that the findings of the jury, on the issues of waiver and estoppel conclusively establish an election by the bank to take the collateral in satisfaction of Burton's debt, and that the election became final and irrevocable upon Burton's delivery of the collateral security to the bank, precluding the bank from later seeking a deficiency judgment.

The judgment of the trial court is reversed, and judgment here rendered that the bank take nothing by its suit.