Marian DODDS and Dona Manley, a/k/a Mrs. John D. Manley, III, Both Individually and d/b/a Centipede Shoe Fashions, Appellants,

v.

CHARLES JOURDAN BOUTIQUE, INC., Appellee.

No. 2467cv.

Court of Appeals of Texas, Corpus Christi.

March 10, 1983.

Rehearing Denied March 31, 1983.

Nan Daniel, Porter, Gonzalez & Rogers, Phillip Westergren, Corpus Christi, for appellants.

John S. Warren, LeLaurin & Adams, Corpus Christi, for appellee.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is an appeal from a suit on a sworn account involving undisclosed agency. Charles Jourdan Boutique, Inc., plaintiff-appellee, sued Marian Dodds and Dona Manley, defendants-appellants, individually and doing business as Centipede Shoe Fashions, for $11,240.25. Appellants filed a sworn denial and answered that they were not liable in the capacity in which they were sued.

Trial was to a jury which found that appellants were acting as agents for an undisclosed principal. The trial court therefore entered judgment against appellants individually for the amount sued plus attorney's fees. Among other things, appellants raised "no evidence" and "insufficiency of the evidence" points on this appeal. We affirm.

In 1977, Dodds and Manley opened a shoe store called Centipede Shoe Fashions. Before purchasing any shoes from appellee, Dodds and Manley incorporated as Dodman, Inc., and filed an assumed name certificate reflecting that Dodman, Inc., would be conducting business under the name of Centipede Shoe Fashions. These documents were not furnished to appellee and the new customer account application, order forms, credit reference, and most correspondence was in the name of Dodds and Manley, doing business as Centipede Shoe Fashions.

Appellants' account with appellee became delinquent and this suit followed. Appellee's petition did not specifically allege that appellants were liable as agents for an undisclosed principal. Appellants did not accept to appellee's pleading.

Appellants were served with a request for admissions and interrogatories requiring them to answer them within thirty days. *Manley* did not respond within the time limit nor move for additional time. About two months later, Manley answered stating that she could not admit nor deny the matters requested because she had no personal knowledge of them. *Dodds* did not respond at all.

Appellee filed a motion to deem the request for admissions admitted. The trial court signed an order which in summary, admitted that Centipede purchased from appellee the items shown in the exhibits attached to appellee's original petition, that each of the documents was a true and correct copy of the original, that Centipede accepted the items sold by appellee as shown in the exhibits, that the stated price for the items was the agreed price, that the price was usual and customary, that the balance due and owing by Centipede was $11,240.25, that there were no other credits which were due, that a written demand for payment was made more than thirty days prior to the filing of the lawsuit, that Dodds and Manley were the sole stock holders in Dodman, Inc.

The evidence at trial showed that Manley made one buying trip to New York but that her role in this venture was primarily as an investor. Dodds made all the other trips and in general was in charge of the day to day operations of the business. The shoe store was an addition to an existing woman's clothing store owned by Dodds.

Both appellants testified at trial in addition to appellee's personnel. The documents attached to appellee's petition that corresponded with the court order regarding the admissions were admitted into evidence. Dodds testified that she told Ms. Snider, appellee's employee, that they were incorporated when they first set up the account. This alleged conversation happened about three years from the date of the trial and Ms. Snider testified that she did not remember this conversation.

Prior to the submission of the case to the jury, appellee filed a supplemental petition alleging that appellants had not furnished appellee sufficient information to put it on notice as to the status of Centipede. Though this petition was filed, the court noted that it was "denied." The trial court also denied a trial amendment to the same effect. Over appellants' objections, the court submitted the case to the jury on the theory of undisclosed agency and they were all answered in appellee's favor.

Appellants allege that the trial court committed error in submitting issues based on undisclosed agency because they were not supported by the pleadings. We disagree.

Tex.R.Civ.P. 1 provides that the rules are to be liberally construed. They further provide that plaintiff's petition for relief "shall contain (a) a short statement of the cause of action sufficient to give *fair notice* of the claim involved." Tex.R.Civ.P. 47 (emphasis added).

Tex.R.Civ.P. 90 provides:

"Every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing shall be deemed to have been waived by the party seeking reversal on such account."

▮ Appellee's pleading gave appellants fair notice that appellee was seeking to hold appellants personally liable for the debt. "... [I]f [a party's] pleading asserts propositions upon which his opponent also relies, the opponent may consider such propositions as before the court and need not repeat them ... And when the petition is not challenged by special exception, and the defect is first raised during the trial by an objection to the evidence, a motion to strike, a motion for instructed verdict or otherwise, the same rule of aider will be applied." McDonald, Texas Civil Practice § 5.09.5 (1970).

"Sometimes the fact or existence of the agency may not be alleged in the plaintiff's petition. In such a case, the issue may then be raised by the defendant's pleading .... Where the issue is thus presented, it should be submitted to the jury." 3 Tex. Jur. 3rd, Agency § 216 (1980).

Since this issue was raised by appellants' pleading, the court properly submitted the case to the jury. No error is shown.

■ We next consider whether the trial court erred in entering judgment for appellee because of either legal or factual insufficiency of the evidence as alleged by appellants. In passing on "no evidence" points we may consider only the evidence, if any, and the inferences thereon tending to support the jury findings in question and we must disregard all evidence which would lead to a contrary result. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Salazar v. Hill,* 551 S.W.2d 518 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). A careful review of the record, considering only the evidence and inferences in support of the findings and disregarding all to the contrary, indicates that there was evidence to support the jury findings on all issues submitted. Accordingly, appellants' no evidence points are overruled.

■ In passing on the factual insufficiency points, i.e., "against the great weight and preponderance of the evidence" points we must examine the whole record to determine whether there is any evidence of probative value to support the jury findings. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (Tex.1951).

■ In the case at bar, Dodds testified that she told Ms. Snider, appellee's sales representative, that Dodman, Inc., had been formed to operate Centipede Shoe Fashions and that she sent a financial statement to appellee which disclosed a corporation. Ms. Snider testified that she had no recollection of either appellant discussing the business being incorporated or referring to Dodman, Inc., as their principal. This testimony along with the other factors we have discussed, is sufficient to raise a fact issue concerning the alleged disclosure made by Dodds to appellee.

■ Appellants also introduced evidence that the certificate of incorporation was on file with the Secretary of State and also that an assumed name certificate was properly filed. Also a director's resolution on file with the First National Bank in Alice was introduced. However, as previously noted, there is no evidence that any of the above documents were ever furnished to appellee.

"One who acts as agent for another in making a contract is individually liable thereon if, at the time of making the contract, he fails to disclose his agency and the identity of his principal .... If the agent would avoid personal liability, the duty is on him to disclose his principal; it is not upon the party with whom the agent deals to discover the principal...." 3 Am.Jur.2d Agency § 317 (1962). See also *Anderson v. Smith,* 398 S.W.2d 635 (Tex.Civ.App.—Dallas 1965, no writ).

In this connection, Manley asserts in her sixth point of error that since Ms. Snider (appellee's employee) did not specifically deny whether Dodds told her of the corporation, that it was error for the trial court to deny her motion for judgment n.o.v. "for the reasons that all evidence conclusively proved that appellee was aware" that they were acting on behalf of Dodman, Inc., d/b/a Centipede Shoe Fashions.

■ Generally, evidence given by a party or a witness who has an interest in the outcome of the suit cannot be the basis of an instructed verdict; it raises an issue of credibility upon which the jury must pass. *Collora v. Navarro,* 574 S.W.2d 65 (Tex.1978). While recognizing this rule, appellants assert that they come within the exception recognized in *Collora.* They argue that Dodds' testimony "pertains to matters reasonably capable of exact statement, and is clear, direct, and positive, is internally dicted either by the testimony of other witnesses or by circumstances—in

short, when there is nothing to cause any reasonable suspicion as to its truth." Id. 69. However, as the court stated in *Collora:*

> "... the general rule governing the finality to be given to testimony of an interested witness is by no means an absolute one to be applied in a cut—and—dried fashion. Rather, it is flexible and its application must turn on the facts of each case. Certainly there will be cases where the credibility of an interested witness or party is so suspect that it must go to the jury, even though the testimony is uncontradicted." Id. 69.

We believe that this is such a case. The initial credit application pertains to appellants d/b/a Centipede Shoe Fashions and not to Dodman, Inc. As previously noted, neither the certificate of incorporation nor the assumed name certificate were furnished to appellee. These circumstances made Dodds' testimony suspect and thereby raised a jury issue, which issue was answered against the appellants.

█ After carefully reviewing all of the evidence in the record, we are of the opinion that the evidence amply supports the jury's answers to Special Issues 1–5 and that such findings are not against the great weight and preponderance of the evidence. Appellant's insufficient evidence points of error are overruled.

█ We next consider Manley's first point of error where she alleges that the trial court committed error in admitting Dodds' request for admissions because they were hearsay as to her. Generally, answers to requests for admissions or the failure to respond can be used only against a party making the admissions or that fails to respond. *Portland Sav. & Loan Ass'n v. Bevill, etc.,* 619 S.W.2d 241 (Tex.Civ.App.—Corpus Christi 1981, no writ); *Prewitt v. First National Bank of Waco,* 491 S.W. 950 (Tex.Civ.App.—Waco 1973, no writ); *H. Richards Oil Company v. W.S. Luckie, Inc.,* 391 S.W.2d 135 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.). However, in the case at bar, it is undisputed that Dodds was an agent for Manley. In her answers to the requests for admissions, Manley stated that she "cannot admit or deny this request for admissions for the reason that she did not participate in any way in the daily business transactions of the Centipede Shoe Fashions, nor did she have personal knowledge of what items or services were purchased from plaintiff. The daily affairs of the business were handled by Mrs. Marion D'Unger Nee Dodds, who had personal knowledge of all transactions." The order deeming the request for admissions admitted reflects that Manley's responses were taken into consideration by the trial court. Furthermore, it can be argued that when Manley did not answer the request for admissions or move for more time to answer, they were deemed admitted by operation of Tex.R.Civ.P. 169; *Elkins v. Jones,* 613 S.W.2d 533 (Tex.Civ.App.—Austin 1981 no writ); *Packer v. First Texas Savings Ass'n of Dallas,* 567 S.W.2d 574 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.). Any error committed in the Order Deeming Requests for Admission Admitted did not cause an improper judgment against Manley, since the elements of the account were not disputed.

> "In order to accomplish the objective of the Rules of Civil Procedure with 'as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable' in the application of Rule 169 and to effect its purpose, trial judges must be left free to exercise judicial discretion. [citations omitted]. In arriving at a decision as to whether a party answering Requests for Admission of Facts has discharged his burden of positive denial or of justification whenever he contends that he cannot truthfully make an admission or denial, a trial court is often required to exercise some discretion in deciding whether a fact should be considered as one about which there is no real controversy and which therefore should be deemed admitted. Appellate courts should not overrule such decisions of trial courts unless there has been an unreasonable exercise of power and discretion." *Sanchez v. Caroland,* 274 S.W.2d 114, 117 (Tex.Civ.App.—

Fort Worth 1954, no writ). See also *Bynum v. Shatto,* 514 S.W.2d 808 (Tex.Civ. App.—Corpus Christi 1974, no writ).

No abuse of discretion is shown in the case at bar. Manley's first point of error is overruled.

Manley next asserts in point of error two that the trial court committed error in admitting plaintiff's account because the proper predicate was not laid in accordance with Art. 3737e, V.A.T.Civ.S. and these documents were hearsay as to her. The documents in question consisted of appellee's statement of account and invoices which were attached to appellee's original petition. The trial court admitted them because the court had previously signed an order that the documents were genuine and true and correct copies of the original documents. Therefore, these documents did not need to be authenticated further. No error is shown.

All points of error have been reviewed, and they are overruled.

The judgment of the trial court is affirmed.